# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CASE NO.: 3:15-cv-00634-RLV-DCK

| | |
|---|---|
| ANGELINE GAINEY o.b.o. J.G., | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on cross-motions for summary judgment. (Docs. 13, 15). Also before the Court is the February 23, 2017 Memorandum and Recommendation of United States Magistrate Judge David C. Keesler, to whom the motions were referred for recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. 17). The Magistrate Judge recommended that Plaintiff's motion be denied, that Defendant's motion be granted, and that the Commissioner's decision be affirmed. (Doc. 17 at 11). Plaintiff filed Objections (Doc. 18) and Defendant responded (Doc. 20). For the reasons set out below, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff, on behalf of minor child J.G. ("J.G."), seeks judicial review of the June 24, 2014 decision of Administrative Law Judge Sara L. Alston ("ALJ Alston") determining J.G. was not disabled under Title XVI of the Social Security Act and therefore not entitled to child supplemental security income. (Doc. 1; *see* Transcript of the Record of Proceedings ("Tr.") 38).

A prior application for child supplemental security income was filed on behalf of J.G. on May 29, 2007. (Tr. 89). On October 16, 2009, an ALJ issued a decision on the original application, finding that J.G. was not disabled ("2009 Decision"). (Tr. 99). In December 2010 another application was filed on behalf of J.G. (Tr. 23, 240). Plaintiff's 2010 application was initially denied on May 19, 2011, and, upon reconsideration, again denied on November 10, 2011. (Tr. 144, 157). Plaintiff received a hearing before ALJ Alston on January 30, 2014. (Tr. 23, 47-85).

Through a written decision dated June 24, 2014, ALJ Alston concluded that J.G. had not been under a statutory disability since December 2010, when the second application was filed ("2014 Decision"). (Tr. 20-39). On November 5, 2015, the Appeals Council denied Plaintiff Gainey's request for review, making ALJ Alston's decision the final decision of the Commissioner. (*See* Tr. 1). Plaintiff Gainey, on behalf of J.G., brought the present action, seeking review of the 2014 Decision. (Doc. 1).

## II. EVALUATING CHILD DISABILITY CLAIMS AND THE 2014 DECISION

In deciding whether J.G. was disabled, ALJ Alston applied the three-step sequential evaluation process ("SEP") applicable to a child. (Tr. 24). A child under eighteen years of age is considered disabled for supplemental security income purposes if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

In deciding whether a child is disabled, an ALJ at Step One determines whether the child is engaged in substantial gainful activity. If not, the ALJ moves to Step Two and determines whether the child has a physical or mental impairment or combination of impairments that is severe. If the ALJ at Step Two finds the impairment(s) severe, the ALJ proceeds to Step Three and determines whether the claimant has an impairment(s) that (1) meets, (2) medically equals, *or*

(3) functionally equals the Listing of Impairments set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 416.924(a)**,** 416.925(a). If the child has an impairment(s) that meets or medically equals or functionally equals the listings, the ALJ must find the child disabled, provided the child also meets the duration requirement. 20 C.F.R. § 416.924(d)(1). If the child's impairment(s) does not meet the duration requirement, or does not meet, medically equal, or functionally equal the listings, the ALJ will find the child is not disabled. 20 C.F.R. § 416.924(d)(2).

In determining whether a child's impairment(s) "functionally equal" the listings (also known as "functional equivalence"), an ALJ considers how the child functions in terms of six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1), (g)-(l). The ALJ assesses functioning in each domain, in part, by considering descriptors based on where the child falls in the following age groups: (1) newborns and infants (birth to attainment of 1 year of age); (2) older infants and toddlers (age 1 to attainment of age 3); (3) preschool children (age 3 to attainment of age 6); (4) school age children (age 6 to attainment of age 12); and (5) adolescents (age 12 to attainment of age 18). 20 C.F.R. § 416.926a(g)-(l).[1] To qualify for disability under "functional equivalence," a child's impairment(s) "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).

In this case, ALJ Alston at Step One found J.G. had not engaged in substantial gainful activity since the date of his application and at Step Two found J.G. had the following severe

---

[1] Age-group descriptors are provided for each domain except health and physical well-being. The regulations also set out examples of limited function by domain. These examples are not age-specific and are in addition to the age-group descriptors. 20 C.F.R. § 416.926a(g)-(l); *see* Social Security Rulings 09-3p, 09-4p, 09-5p, 096p, 09-7p, & 09-8p.

3

impairments: learning disorder, arthropathies, achondrophlasia with spondylometaphyseal, coxa vera, and developmental delays. (Tr. 26). At Step Three, ALJ Alston found J.G. did not have an impairment or combination of impairments that met or medically equaled one of the listings. (Tr. 26). ALJ Alston, therefore, was required to consider whether J.G. had an impairment or combination of impairments that "functionally equaled" the listings.

ALJ Alston, evaluating J.G. as a "school age child," found that J.G. had "less than marked limitation" in each of the six domains. (Tr. 27-38). In other words, ALJ Alston found that J.G. did not have a "marked" or "extreme" limitation in any of the six domains and, as a result, found that J.G. did not have an impairment or combination of impairments that functionally equaled the listings. (Tr. 32-38). These findings mandated a conclusion that J.G. was not disabled for the applicable period. *See* 20 C.F.R. § 416.926a(a). The Appeals Council denied a request for review of the 2014 Decision. (Tr. 1). In reaching her decision, ALJ Alston did not specifically address the findings of the prior 2009 Decision. Although the 2009 Decision found J.G. not disabled, the ALJ in that decision, applying the domain benchmarks for preschool children (given J.G.'s age during the relevant period), found that J.G. had a marked limitation in one of the six domains, that of "caring for himself." (Tr. 94-99 (finding "less than marked limitation" for the other five domains)).[2]

Plaintiff Gainey, on behalf of J.G., seeks reversal of the 2014 Decision, arguing that ALJ Alston committed reversible error by not considering the findings of the 2009 Decision in denying J.G. benefits. (Doc. 1; Doc. 14 at 1-2). Plaintiff has filed Objections to the Magistrate Judge's

---

[2] Because J.G. did not have an "extreme limitation" in any domain of functioning or a "marked limitation" in *two* domains of functioning, the 2009 Decision determined J.G. was not disabled for the period between the date of his first application and the date of the 2009 Decision. (Tr. 99). *See* 20 C.F.R. § 416.926a(a).

4

Memorandum and Recommendation ("M & R"), which recommended that the Commissioner's 2014 Decision be affirmed. (Doc. 18).

## III. STANDARD OF REVIEW

The Federal Magistrates Act requires a district court to "make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)) (emphases and brackets omitted). Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the undersigned has conducted a careful review of the M & R as well as a *de novo* review of the portions of the M & R and specified proposed findings and recommendations subject to Plaintiff's Objections.

The district court's review of the Commissioner's final decision is limited to the following two issues: (1) whether the Commissioner's factual findings are supported by substantial evidence; and (2) whether the Commissioner applied the correct legal standards.[3] *Hancock v. Astrue,* 667 F.3d 470, 472 (4th Cir. 2012); *see* 42 U.S.C. § 405(g). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472. While substantial evidence "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 564-55 (1988), it is "more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established," *Smith v. Heckler,* 782 F.2d 1176, 1179 (4th Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (brackets omitted). When reviewing for substantial evidence, the court does not undertake to reweigh evidence, make

---
[3] When the Appeals Council denies a claimant's request for review, as it did in this case (Tr. 1), the ALJ's decision becomes the Commissioner's final decision. *Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002).

5

credibility determinations, or substitute its judgment for that of the ALJ. *Hancock*, 667 F.3d at 472.

## IV. DISCUSSION

### A. Plaintiff's Arguments, the M & R, and Plaintiff's Objections

Plaintiff asserts that in determining whether J.G. was disabled ALJ Alston failed to consider the findings of the prior 2009 Decision. This failure, Plaintiff argues, violates *Albright v. Comm'r of Social Sec. Admin.*, 174 F.3d 473, 477 (4th Cir. 1999), and Social Security Administration Acquiescence Ruling 00-1(4), which Plaintiff notes "dictate that when rendering a decision in a subsequent claim, the ALJ must consider a prior, final decision of the Commissioner as evidence and assign appropriate weight to its findings in a subsequent decision."[4] (Doc. 14 at 1-2). Plaintiff contends this error is significant because (1) the 2009 Decision found J.G. suffered from a "marked" limitation in the domain of "caring for himself" and (2) evidence demonstrates that J.G.'s orthopedic deformities have worsened since the 2009 Decision, especially in the domain of "moving about and manipulating objects." (Doc. 14 at 2). Plaintiff concludes that "[b]ecause [ALJ Alston] did not consider and assign weight to the findings and prior [2009] decision, it is impossible for th[e] court to evaluate whether her weighing of that decision was proper and supported by substantial evidence." (Doc. 14 at 8).

The Magistrate Judge, in recommending that the Commissioner's decision be affirmed, found persuasive Defendant's "two compelling reasons [for finding that] the ALJ's failure to consider the 2009 decision was at most harmless error." (Doc. 17 at 8). First, the Magistrate Judge observed that even *if* J.G. was determined to have a marked limitation in one domain, *i.e.*, caring

---

[4] Social Security Administration Acquiescence Ruling 00-1(4), 65 Fed. Reg. 1936-01, 2000 WL 43774 ("AR 00-1(4)"). The Acquiescence Ruling applies to Social Security disability evaluations in the Fourth Circuit. 2000 WL 43774, at *1.

6

for himself, neither ALJ (separately or combined) found that J.G. has a marked limitation in *two* domains or a severe limitation in any one domain. A marked limitation in only one domain and less than marked limitation in the other domains would be insufficient to establish disability. (Doc. 17 at 9). Second, and as an independent ground for finding harmless error, the Magistrate Judge noted that an interval of four years and eight months passed between the 2009 Decision and the 2014 Decision and that ALJ Alston was assessing J.G.'s functional abilities against regulatory benchmarks that differed from than those used in the 2009 Decision because J.G.'s age group had changed. (Doc. 17 at 10).

The Magistrate Judge also observed that both of Plaintiff's "Notice of Disapproved Claims" issued by the Social Security Administration explicitly stated that "[t]he Albright court case decision was applied in deciding this case" and concluded that such "appears to be consistent with the Acquiescence Ruling relied upon by Plaintiff." (Doc. 17 at 10). The Magistrate Judge, "not convinced that Albright requires remand under the circumstances of this case" and finding that substantial evidence supported ALJ Alston's decision, recommended that the Commissioner's decision be affirmed. (Doc. 17 at 10-11).

Plaintiff objects to both grounds supporting the M & R's proposed finding that any error in ALJ Alston's failure to consider findings in the 2009 Decision was harmless. She also objects to the recommendation that the Commissioner's decision be affirmed. (Doc. 18.) The Court will undertake a *de novo* review of the portions of the M & R and proposed findings and recommendations to which Plaintiff objects. The Court will first review *Albright* and AR 00-1(4) and determine their application to the 2014 Decision.

### B.     The *Albright* Decision and Acquiescence Ruling 00-1(4)

At the heart of Plaintiff's Motion for Summary Judgment and her Objections to the M & R is *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999), and the Social Security Administration's Acquiescence Ruling 00-1(4) that applies *Albright* and *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987), to Social Security disability claims in the Fourth Circuit. Previously, the Social Security Administration ("SSA"), in addressing a subsequent disability claim, "consider[ed] the issue of disability with respect to a period of time that was not adjudicated in the final determination or decision on the prior claim to be a new issue that requires an independent evaluation from that made in a prior adjudication. Thus, . . . SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period [and] does not consider prior findings made . . . on the prior claim as evidence . . . in the subsequent claim." AR 00-1(4).

*Albright* and *Lively* changed the SSA's approach in the Fourth Circuit by requiring an ALJ to consider findings that had been required at a step in a sequential evaluation process (or a residual functional capacity determination) in a final, prior decision. Now, when an ALJ adjudicates a subsequent disability claim for a previously unadjudicated period, the ALJ "must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances."[5] AR 00-1(4) (also setting out factors to be considered by the adjudicator). Read as a whole, AR 00-1(4) references a "prior finding" not as limited to the determination of disability itself but as applicable to a finding "required at a step in the sequential evaluation process for determining disability." *Id*. The requirement is mandatory because the ALJ "must consider such

---

[5] The Court in *Albright* opined that "SSA's treatment of later-filed applications as separate claims is eminently logical and sensible." 174 F.3d at 473. The Court, however, concluded that the Commissioner, in denying Albright's claim solely on the basis of a prior adverse adjudication involving an earlier time period, interpreted Fourth Circuit precedent too broadly. *Id*. at 474, 477-78.

a prior finding" in determining a subsequent claim. AR 00-1(4) on its face applies to a child's disability determination, referencing 20 C.F.R. § 416.924 which sets out how the SSA determines disability for children. AR 00-1(4), 2000 WL 43774, at *4.

C.   **Application of *Albright* and AR 00-1(4) to the 2014 Decision**

A threshold question is whether ALJ Alston complied with *Albright* and AR 00-1(4). The Court finds she did not. It is true, as the M & R notes, that both of the Commissioner's "Notice of Disapproved Claim" explicitly state that: "The Albright court case decision was applied in deciding this case." (Doc. 17 at 2, 10 (citing Tr. 144, 157)). The M & R concludes that this "determination, affirmed by the ALJ, appears to be consistent with" AR 00-1(4). (Doc. 17 at 10). The Magistrate Judge is correct that these statements are consistent with AR 00-1(4). The quoted language, however, relates to the Commissioner's denial of Plaintiff's application initially on May 19, 2011 (Tr. 144), and on reconsideration on November 10, 2011 (Tr. 157). ALJ Alston, however, never cited the 2009 Decision nor any of its findings in her 2014 Decision. (Doc. 16 at 4 (admission by Defendant); *see* Tr. 20-39). Although the earlier Notices of Disapproved Claims are part of the record, AR 00-1(4) requires the "adjudicator" to consider prior findings. When a claimant is granted a hearing, the ALJ becomes the adjudicator and, if the Appeals Council declines a request for review, the ALJ's decision becomes the final decision of the Commissioner. *See Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002).

To be sure, the 2009 Decision is the first document in the List of Exhibits appended to the 2014 Decision. (Tr. 40 ("HO B1A ALJ Decision – Prior 10/13[sic]/2009")). The Court notes as well ALJ Alston's statement that she made her findings of fact and conclusions of law, including her finding that J.G. had less than marked limitation in the ability to care for himself, "[a]fter careful consideration of the record as a whole." (*See* Tr. 26, 37). She also stated that she

9

considered "the complete medical history" and referenced several medical records that predated the 2009 Decision. (Tr. 23, 29). There is authority for the proposition that an ALJ's failure to mention a prior decision does not require remand if the prior decision is contained in the List of Exhibits attached to the later decision and "the ALJ considered the prior ruling as demonstrated by the consistent and more favorable" findings in the subsequent determination. *Harris v. Astrue*, No. 12-CV-45, 2013 WL 1187151, at *8 (N.D.W. Va. Mar. 21, 2013).

The Court finds *Harris* inapplicable to this case. First, the finding regarding J.G.'s ability to care for himself in the 2014 Decision was not more favorable to J.G. than the corresponding finding in the 2009 Decision. Further, with respect to references in the 2014 Decision to ALJ Alston's "careful consideration of the record as a whole," "[t]o hold that such boilerplate language meets the requirement of the Ruling would universally render an ALJ's written decision unreviewable under AR 00-1(4)." *Stutler v. Colvin*, No. 2: 15-cv-11418, 2016 WL 4211812, at *9 (S.D.W. Va. June 2, 2016) (M.J.), *report and recommendation adopted by* No. 2:15-cv-11418, 2016 WL 4203552 (S.D.W. Va. Aug. 9, 2016). Defendant has not directed the Court to any part of the ALJ's decision which acknowledges, let alone discusses, the 2009 Decision or its findings and the Court has found none. This falls short of AR 00-1(4)'s requirement that the ALJ consider prior findings as evidence and assign weight to that evidence.[6]

The Court, therefore, concludes that the 2014 Decision does not comply with AR 00-1(4). The Court would, in the normal course, remand for further administrative proceedings. *See Stutler*, 2016 WL 4211812, at *9 ("Courts within the Fourth Circuit have generally found remand appropriate under AR 00-1(4) where an ALJ neglects to discuss a final, prior decision at an

---

[6] This is not to say that inclusion of the prior opinion as a record exhibit and reference by the ALJ to medical records from the period subject to the prior adjudication are not relevant to determining whether an ALJ complied with *Albright* and AR 00-1(4). In this case, however, they are not in themselves sufficient.

10

administrative hearing level, and the prior decision contains findings more favorable to the claimant than the ALJ's subsequent decision." (citing opinions)). Under the circumstances of this case, however, the Court concludes that this failure is harmless, substantial evidence supports the 2014 Decision, and remand is not required.

### D. Application of the Harmless Error Rule to the 2014 Decision

After careful consideration of the Parties' arguments, the court agrees with the Magistrate Judge's proposed finding that any error in ALJ Alston's failure to consider findings in the 2009 Decision is harmless because explicit consideration of the 2009 Decision could have at most resulted in a finding of marked limitation in only one domain, which would fall short of marked limitation in two domains required for a determination that J.G. was disabled. The Court also finds merit in the Magistrate Judge's alternative proposed finding that any error was harmless because ALJ Alston was applying a different set benchmarks than that used in the 2009 Decision due to J.G.'s inclusion in a different age group and a significant amount of time had passed between the two decisions. The Court, however, finds it unnecessary to consider the M & R's proposed alternative finding.

#### 1. Harmless Error Rule

The harmless error rule applies to this Court's review of Social Security appeals. "Administrative adjudications are subject to the same harmless error rule that generally applies to civil cases. . . . The harmless error rule applies to agency action because if the agency's mistake did not affect the outcome, it would be senseless to vacate and remand for reconsideration." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016) (Black Lung benefits case). The Fourth Circuit Court of Appeals has applied the harmless error analysis to review of Social Security disability determinations. *E.g.*, *Morgan v. Barnhart*, 142 F. App'x 716, 722-23 (4th Cir.

11

2005) (unpublished); *Camp. v. Massanari*, 22 F. App'x 311, 311 (4th Cir. 2001) (unpublished per curiam); *see Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (ALJ's error of determining claimant's residual functional capacity before assessing credibility "would be harmless if he properly analyzed credibility elsewhere"). "Harmless error results when there is a showing that evidence, even when properly considered by the ALJ, would not result in a different decision." *Mullinax v. Colvin*, No. 5:13-cv-169-GCM, 2014 WL 6997766, at *4 (W.D.N.C. Dec. 10, 2014).

When an insufficient record precludes a court's determination that the ALJ's decision was supported by substantial evidence, however, a court may not affirm for harmless error. *Patterson v. Comm'r of Social Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). A court "cannot fill in the blanks for the ALJ in the first instance." *Id*. at 662.

### 2. *Albright* Consideration Would Not Have Altered the Outcome in this Case and, therefore, Failure to Apply AR 00-1(4) was Harmless Error

Plaintiff objects to the Magistrate Judge's proposed finding that "even *if* Plaintiff J.G. was determined to have a marked limitation in one domain, such as caring for himself, he still would not have been found to be disabled – neither ALJ reviewing this case (or the SSA) found that J.G. had a marked limitation in two domains, or a severe limitation in any one domain" (Doc. 17 at 9 (emphasis in original)). (Doc. 18 at 3). In her Objections, Plaintiff argues that the M & R "misses Plaintiff's point and the point of AR 00-1-(4)" and states:

> [The ALJ in the 2009 Decision] found that [J.G.] had marked limitation in the functional domain of 'caring for himself' (Tr. 98) and as Plaintiff noted in his principal brief, the evidence demonstrates that his functional status has worsened in the domain of 'moving about and manipulating objects' since [the 2009] decision. . . . Thus, an adequate analysis of [the prior ALJ's] decision while taking into consideration what has changed in J.G.'s case with the passage of time could have led to a finding that J.G. suffered from marked limitation in at least two functional domains and thus was disabled under the child SSI guidelines.

(Doc. 18 at 3). Plaintiff concludes that because ALJ Alston did not consider and weigh the findings in the 2009 Decision, "it is impossible for this Court to evaluate whether [the ALJ's] treatment of that decision was proper and supported by substantial evidence." (Doc. 18 at 3). The Court disagrees with Plaintiff's conclusion.

The Court, however, does agree that if ALJ Alston had considered the prior findings as to "caring for oneself" in the 2009 Decision favorable to J.G., she *might* have found a marked limitation in that domain.[7] ALJ Alston did not note, let alone discuss and assign weight to, the prior finding in the "caring for oneself" domain, thereby precluding effective Court review of her finding regarding that domain. The Court will not speculate about what ALJ Alston might have done or not done in this regard but will, for purposes of analyzing Plaintiff's Objections and the harmless error rule, treat J.G. as having a marked limitation in the domain of "caring for oneself."

This treatment, however, does not end the inquiry and the Court will address Plaintiff's argument that "evidence demonstrates that J.G.'s functional status has worsened since" the 2009 Decision in the "moving about" domain. (*See* Doc. 14 at 5-6; Doc. 18 at 3). Plaintiff does not argue that the prior findings for that domain should be given weight under AR 00-1(4). Rather, Plaintiff's briefing employs AR 00-1(4) in examining ALJ Alston's failure to address a favorable finding in the 2009 Decision regarding J.G.'s ability to care for himself. (*See* Doc. 14 at 5-6; Doc. 18 at 3). This is because the ALJ in the 2009 Decision found less than marked impairment in the "moving about" domain, a finding which Plaintiff would undoubtedly wish be given no weight. (*See* Tr. 97).

The M & R notes that "neither ALJ reviewing this case (or the SSA) found that J.G. had a marked in limitation in two domains, or a severe limitation in any one domain." (Doc. 17 at 9).

---

[7] Plaintiff does not contend that an "extreme" limitation could be found in any domain in this case.

13

Of greater import, no *combination* of findings in the 2009 and 2014 Decisions could result in a finding needed to warrant a determination of disability in J.G.'s case. This approach is consistent with case law. In her Objections, Plaintiff quotes from *Craft v. Colvin*, No. 1:16-cv-97-WO-JLW, 2017 WL 239375 (M.D.N.C. Jan. 19, 2017) (M.J.), *report and recommendation adopted by* No. 1:16-cv-97-WO-JLW, slip op. (M.D.N.C. Feb. 17, 2017). *Craft* is distinguishable. In *Craft*, the ALJ in the prior decision limited the claimant's residual functional capacity ("RFC") to simple, routine, and repetitive tasks in a low stress environment with low production demands. In deciding a subsequent claim, the ALJ there failed to discuss the RFC limitation in the prior decision when issuing an RFC that did not include the prior limitation. 2017 WL 239375, at *4. Significantly, in deciding to remand for further proceedings the court in *Craft* concluded that consideration of the prior RFC finding might be outcome determinative because the prior RFC restriction, when combined with testimony of the Vocational Expert in the subsequent proceeding, would have precluded the ALJ from finding the claimant could return to work (and thus not be disabled), contrary to what the ALJ actually found in the subsequent proceeding. *Id*. at *5. Similarly, in *Lively* (which is discussed in AR 00-1(4)), the Fourth Circuit addressed a situation in which a finding of disability would have been mandated had the ALJ in the subsequent proceeding adopted the RFC finding in the prior decision. *Lively*, 820 F.2d at 1391-92.

Thus, both *Craft* and *Lively* involve a situation in which a combination of findings in the prior and subsequent decisions could have led to a finding of disability. Under that scenario, the failure to consider prior findings would not have been harmless error as the disability outcome might have been different. In J.G.'s case, however, Plaintiff points to no combination of findings in the 2009 Decision and 2014 Decision that could lead to a determination of disability. Rather, Plaintiff seeks a reconsideration of the 2014 Decision's determination that J.G. had less than

14

marked limitation in the "moving about" domain based not on any finding in the 2009 Decision but instead on J.G.'s alleged worsening condition in that domain *since* the 2009 Decision. Plaintiff's argument, in essence, requires a determination of whether ALJ Alston's finding of less that marked limitation in the "moving about" domain is supported by substantial evidence.[8] (Tr. 36).

ALJ Alston found that J.G. had less than marked limitation in moving about and manipulating objects. (Tr. 36). A "marked" limitation in a domain occurs when the impairment(s) "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). ALJ Alston acknowledged testimony that J.G. had to use a wheelchair when his legs hurt after activity, could not keep up with other children, had difficulty getting on playground equipment, and had difficulty cleaning himself after a bowel movement due to the range of motion of his arms. (Tr. 36 (citing Hearing Transcript and Exhibit H17F (Anson Pediatrics Progress Notes))). ALJ Alston also noted Plaintiff Gainey testified that J.G. rode a special handicapped bus to and from school but also noted that J.G. testified that no one walked him to the school bus. (Tr. 28). In her review of the medical records, ALJ Alston noted that J.G. had abnormal gait due to bowing of the legs. (Tr. 29). Further, ALJ Alston undertook a thorough and extensive review of the medical records. (*See* Tr. 29-31).

Plaintiff Gainey's briefing on how J.G.'s condition allegedly worsened since the 2009 Decision mirrors ALJ Alston's observations regarding activity limitations and medical records. Plaintiff points to a few other difficulties experienced by J.G., including difficulty hopping on one leg and, according to a teacher's report, difficulty carrying a binder and at times tripping over his own feet. (Doc. 14 at 7-9). Plaintiff lists J.G.'s awkward gait (which was listed by ALJ Alston)

---

[8] Plaintiff claims the concerns with the "moving about" domain "arguably" have implications for the "health and well-being" domain. (Doc. 14 at 8). Plaintiff did not develop that argument.

although acknowledging that the consultative examiner making that observation also noted that J.G. was able to walk without any devices. Plaintiff also lists the same observation by J.G.'s pediatrician but without reference to walking ability. (*Id*.). Plaintiff also lists additional medical records and a procedure performed *after* ALJ Alston issued the 2014 Decision. (*Id*. at 8).

From the Court's review of Plaintiff's briefing, the 2014 Decision, and the relevant record, it appears that ALJ Alston identified and considered the relevant evidence available to her which Plaintiff identifies as demonstrating that J.G.'s condition worsened since the 2009 Decision. Further, ALJ Alston commented on several particulars regarding J.G.'s specific limitations (*e.g.*, with respect to no one walking him to the special handicapped bus). She also noted that J.G. played sports such as dodge ball, including catching the ball and getting people out, and enjoyed playing video games and watching television which he played and did, at least in part, because he did not like to go outside a lot because his legs hurt when he played there. (Tr. 28). In addition to her review and evaluation of the above evidence, ALJ Alston noted that state-agency consultants Dr. Eleanor E. Cruise, Ms. Angela Brown, and Dr. Perry Caviness reviewed J.G.'s records and assessed him with less than marked limitation in the "moving about" domain, an assessment she found consistent with the evidence of record. (Tr. 32, 36).

In light of the foregoing, the Court concludes that ALJ Alston's finding of less than marked limitation in the "moving about" domain was supported by substantial evidence. Had ALJ Alston considered the 2009 Decision and its prior findings of marked limitation in the "caring for oneself" domain, or the less than marked findings regarding the other domains, the determination that J.G. is not disabled under the Social Security Act would not have been altered. Thus, any error on the part of ALJ Alston in not applying AR 00-1(4) was harmless.

As the Court's conclusion here is alone sufficient to find any error on the part of ALJ Alston in not expressly considering the 2009 Decision and its findings is harmless, the Court declines to address or adopt the M & R's alternate proposed finding that the application of differing benchmarks in the 2009 and 2014 Decisions also renders any error in this case harmless.

## V. CONCLUSION

Having conducted a *de novo* review of the portions of the M & R and proposed findings and recommendations to which objection was made as well as having undertaken a careful review of all other aspects of the M & R, the Court finds that substantial evidence supports the 2014 Decision and any error related to AR 00-1(4) was harmless. The Court, therefore, adopts the M & R to the extent described above and adopts the Magistrate Judge's recommendation that Plaintiff's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Summary Judgment be granted, and the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED THAT:**

(1) Plaintiff's Objections to the Memorandum and Recommendation (Doc. 18) are **OVERRULED** and the Memorandum and Recommendation (Doc. 17) is **ADOPTED AS MODIFIED**;

(2) Plaintiff's Motion for Judgment on the Pleadings (Doc. 13) is **DENIED;**

(3) Defendant's Motion for Summary Judgment (Doc. 15) is **GRANTED**;

(4) The Commissioner's decision is **AFFIRMED**; and

(5) Judgment shall be entered by the Clerk.

Signed: August 3, 2017

Richard L. Voorhees
United States District Judge